TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00106-CR







Ivan Price, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF FAYETTE COUNTY, 155TH JUDICIAL DISTRICT


NO. 93R-031, HONORABLE DAN R. BECK, JUDGE PRESIDING








 The jury found appellant guilty of the offense of delivery of a controlled substance,
cocaine, in an amount less than twenty-eight grams. See Texas Controlled Substances Act, Tex.
Health & Safety Code Ann. § 481.115 (West 1992). Punishment was assessed by the trial court
at confinement for fifteen years and a fine of $2,000. Appellant asserts three points of error,
contending that: (1) the evidence was insufficient to support the conviction; (2) the trial court
fundamentally erred by authorizing his conviction as a party to an actual transfer; and (3) he was
denied the effective assistance of counsel in the trial court. We will overrule appellant's points
of error and affirm the judgment of the trial court.

 The evidence shows that on the night of May 3, 1993, undercover officer J. L.
Wooldridge met Frank Villareal for the purpose of asking Villareal to obtain crack cocaine for
him. After determining that none was readily available in Gonzales County, Villareal advised
Wooldridge that he knew a place in Schulenburg where cocaine could be purchased. Upon their
arrival at a house in Schulenburg, a man Wooldridge identified as appellant came out of the house
and asked what they wanted. Wooldridge testified, "[W]e told him what we were looking for,
and I handed my twenty to Frank [Villareal]. He [Villareal] said, yeah, go ahead and get me a
twenty-dollar rock." Appellant took the money and invited them to wait inside his house while
he left for a short time. Wooldridge testified that he was in the bathroom when appellant
returned, but the door was open and he saw and heard appellant give Villareal the purported crack
cocaine. Villareal handed Wooldridge the "rock," a substance later determined by D.P.S. analysis
to be cocaine. Wooldridge stated that Villareal purchased cocaine for himself in addition to the
"rock" he obtained for Wooldridge.

 Appellant contends that there is a variance in the offense charged, delivery by
constructive transfer, and the proof that showed an actual transfer. Under the Controlled
Substances Act, delivery of a controlled substance may be accomplished in three distinct ways;
actual transfer, constructive transfer, and offer to sell. See Conaway v. State, 738 S.W.2d 692,
694 (Tex. Crim. App. 1987). As a matter of law, these are mutually exclusive ways in which
delivery of a controlled substance may occur. Id.

 Appellant was charged with delivery of a controlled substance by constructive
transfer to Wooldridge. "Actual delivery consists in giving real possession to the vendee or his
servants or special agents who are identified with him in law and represent him." Daniels v.
State, 754 S.W.2d 214, 220 (Tex. Crim. App. 1988). For there to have been a constructive
transfer, the accused transferor must have contemplated that his initial transfer would not be the
final transaction in the chain of distribution. Id. at 221.

 Appellant urges that Wooldridge and Villareal made a joint acquisition of the
cocaine rather than Wooldridge receiving a transfer through Villareal as an intermediary. Where
the transferor knows that he is delivering to a group for the members' joint acquisition, his
delivery to even a lone member of the group constitutes an actual transfer. Stone v. State, 794
S.W.2d 868, 871 (Tex. App.--El Paso 1990, no pet.).

 Appellant urges that the instant cause is controlled by Stone because the evidence
shows a joint purchase. In Stone, the court found an actual transfer based on the jury's right to
accept the officer's testimony that the defendant handed her the cocaine rather than accept the
version related by the paid intermediary. Id. In the instant cause, it is undisputed that the initial
transfer was to Villareal. Thus, the instant case is distinguishable from Stone.

 In the alternative, appellant cites Herberling v. State, 814 S.W.2d 183 (Tex.
App.--Houston [1st Dist.] 1991), aff'd, 834 S.W.2d 350 (Tex. Crim. App. 1992), for the
proposition that there was an actual transfer because Villareal was acting as Wooldridge's agent. 
In Herberling, the initial transfer was made to an informant who had a written agreement with the
State that he would act on behalf of the undercover officer and be subject to his control in
exchange for the recommended dismissal of several charges pending against him. The court held
that such an agreement demonstrates the existence of an agency relationship between the officer
and the informant. Id. at 185. In the instant cause, however, Villareal stated he did not know
that Wooldridge was an undercover officer at the time in question and referred to him in his
testimony as a "snitch" and a "faggot." The facts in the instant cause are readily distinguishable
from the facts in Herberling. 

 The critical inquiry on review of the legal sufficiency of the evidence to support
a criminal conviction is whether the record evidence could reasonably support a finding of guilt
beyond a reasonable doubt. This Court does not ask whether it believes that the evidence at trial
established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after
viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia,
443 U.S. 307, 318-19 (1979); Griffin v. State, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981). 
Viewing the evidence in the light most favorable to the verdict, we hold that a rational trier of fact
could have found there was sufficient evidence to support a finding of constructive transfer of
cocaine as alleged in the indictment. Appellant's first point of error is overruled.

 In his second point of error, appellant asserts that the court fundamentally erred by
including in its charge an instruction that permitted the jury to convict appellant as a party to
Villareal's delivery of cocaine by actual transfer. Appellant first points to the definition of
"delivery" or "deliver" to mean the "actual or constructive transfer from one person to another
of a controlled substance, whether or not there is an agency relationship." The foregoing
definition tracked the statutory definition of "deliver." See Tex. Health & Safety Code Ann.
§ 481.002(8) (West 1992). In addition, appellant did not object to the definition of "deliver" or
the court's instruction on the law of parties.

 Where no objection is voiced to the court's charge at trial, reversal will result "only
if the error is so egregious and created such harm" that the accused "has not had a fair and
impartial trial." See Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). Appellant
relies on Daniels v. State, 754 S.W.2d 214 (Tex. Crim. App. 1988), for the proposition that
fundamental error is shown when the court submits only the theory of actual delivery in its charge
when this theory was not charged in the indictment. The Daniels court held after reviewing the
entire charge, the evidence, the contested issue, and the weight of probative evidence, that the
error in the charge was so egregious and created such harm that the defendant had not received
a fair and impartial trial. Id. at 223. Unlike Daniels, the trial court in the instant cause included
limitations in its application paragraph consistent with the charged offense. See Lacy v. State, 782
S.W.2d 556, 559 (Tex. App.--Houston [14th Dist.] 1989, no pet.). The application paragraph
included an instruction that if the jury found "from the evidence beyond a reasonable doubt
that--[appellant] did then and there intentionally and knowingly deliver, by constructive transfer,
to J. L. Wooldridge, a controlled substance, namely cocaine--then you will find [appellant] guilty
of delivery of a controlled substance as charged in the indictment." The actual degree of harm
caused by the error in the jury charge must be assayed in light of the entire jury charge, the state
of the evidence, including the contested issues and weight of probative evidence, the argument of
counsel, and other relevant information revealed by the record of the trial as a whole. Almanza,
686 S.W.2d at 171. The contested issue as revealed by the evidence and jury argument was the
identity of appellant as the transferor of the contraband. Villareal testified that a person called
"Pumpkin" rather than appellant took the money from him and gave him the cocaine. Despite
defense counsel's extensive cross-examination, Wooldridge was unequivocal in his identification
of appellant as the transferor. Villareal's testimony was inconsistent. While the charge included
an instruction on the law of parties, the charge contained limitations consistent with the charged
offense. When the alleged error is assayed in light of the entire charge, the evidence and the
contested issues, we hold that the complained-of error was not so egregious as to deprive appellant
of a fair and impartial trial. Appellant's second point of error is overruled.

 In his third point of error, appellant asserts that trial counsel was ineffective in that
he failed to: (1) object to testimony of Sheriff Rick Vandel that appellant immediately came to
mind as a "good suspect" for dealing cocaine in the Schulenburg area; (2) object to Villareal's
testimony that appellant shot at him and struck a girl during a 1991 drug deal; (3) request a
mistrial when Villareal testified to the effect that he had heard that "Pumpkin" sold cocaine for
appellant; (4) impeach Villareal with a prior sworn statement in which he stated that he had never
met appellant prior to Villareal's sentencing; and (5) object to that portion of the court's charge
which authorized the jury to convict appellant as a party to delivery by actual transfer.

 The standard by which we judge whether a defendant received reasonable assistance
was reviewed in Haynes v. State, 790 S.W.2d 824 (Tex. App.--Austin 1990, no pet.):



In Strickland v. Washington, the Supreme Court held that in order to show
ineffective assistance of counsel, a convicted defendant must (1) show that his trial
counsel's performance was deficient, in that counsel made such serious errors he
was not functioning effectively as counsel, and (2) show that the deficient
performance prejudiced the defense to such a degree that appellant was deprived
of a fair trial. In this connection, a strong presumption exists that counsel rendered
adequate assistance and made all significant decisions in the exercise of reasonable
professional judgment. "Prejudice," however, is demonstrated when the convicted
defendant shows a reasonable probability that, but for counsel's unprofessional
errors, the result of the proceedings would have been different. "A reasonable
probability is a probability sufficient to undermine confidence in the outcome." 
No mechanistic formula was provided by Strickland. "The benchmark for judging
any claim of ineffectiveness must be whether counsel's conduct so undermined the
proper functioning of the adversarial process that the trial cannot be relied on as
having produced a just result."



Id. at 826 (citations omitted). The constitutional right to counsel does not mean errorless counsel
or counsel whose competency is judged by hindsight. See Ex parte Cruz, 739 S.W.2d 53, 58
(Tex. Crim. App. 1987). The standard of review for effectiveness of counsel is gauged by the
totality of the representation of the accused. See id.

 Appellant urges that trial counsel should have sought a mistrial or objected and
asked for an instruction when Sheriff Rick Vandel testified that appellant immediately came to
mind as a suspect. Appellant contends that Vandel's testimony constituted character evidence that
is inadmissible to prove conduct. See Tex. R. Crim. Evid. 404. Prior to the complained of
testimony, Vandel testified that he had been asked for a photograph of a person with the last initial
"P" who lived in the lower end of Schulenburg that would be a good suspect as one who sells
cocaine. Appellant urges that counsel should have asked for a hearing outside of the jury at this
time. We conclude that counsel should have objected and sought further relief when Vandel
testified that appellant's name immediately came to mind. However, it must be borne in mind that
an accused is not entitled to errorless counsel, and this omission must be viewed in the light of
the totality of trial counsel's representation. See Porter v. State, 832 S.W.2d 383, 385 (Tex.
App.--Houston [1st Dist.] 1992, no pet.) (noting the failure to object to improper jury argument
does not usually reflect ineffective assistance).

 Appellant urges that trial counsel should have objected to Villareal's testimony that
appellant shot at him and struck a girl in the head during a drug transaction. Appellant states that
involvement in a drug transaction may have been relevant on the question of identity, but contends
that the portion relevant to the shooting had no probative value and was extremely prejudicial. 
Appellant relies on Bishop v. State, 869 S.W.2d 342 (Tex. Crim. App. 1993), for the proposition
that for an extraneous offense to be admissible on the question of identity, it must be so unusual
and so nearly identical to the charged offense to amount to the "signature" of the defendant. Id.
at 346. Villareal, a witness for appellant, provided the testimony to support appellant's defense
of mistaken identity. Competent trial counsel may have reasonably concluded that any harm
caused by an extraneous offense could have been more than offset by the bolstering effect it may
have had on Villareal's testimony. Without regard to the reason given by trial counsel at the
motion for rehearing for his failure to object, we find it difficult to fault counsel for strategy that
shows that Villareal would testify in behalf of appellant despite the fact that he had shot at him.

 Appellant complains of trial counsel's failure to ask for an instruction to disregard
and move for a mistrial when the following occurred during the prosecutor's cross-examination
of Villareal:



Q. [Prosecutor]: Did you also relate to me that Pumpkin, he sells for Ivan Price
[appellant]?


A. [Villareal]: I didn't know if I put it exactly like that. I just heard that they
were --


 MR. REUR [defense counsel]: Your Honor, I object to hearsay.


 THE COURT: Sustained.


Q. Did you tell me that -- do you have personal knowledge of what Ivan Price and
Leonard Houston [Pumpkin] do?


A. No, Sir. I don't.



In addition to the trial court sustaining defense counsel's objection, Villareal denied having known
anything about what appellant and Pumpkin did. While trial counsel should have probably asked
for additional relief in view of Villareal's answer, we do not find this omission, standing alone,
such as to render trial counsel's representation ineffective.

 Appellant urges that trial counsel should have impeached Villareal with a sworn
written statement that trial counsel had taken prior to trial that stated he had never met appellant
prior to his (Villareal's) sentencing. Appellant contends this statement should have been used to
impeach Villareal when he testified that the only reason Pumpkin's name "came up" on May 4,
1993 was because appellant "needed to see `Pumpkin' to get the rocks." Our review of the record
at the motion for new trial reflects that the trial court ruled that the statement in question had not
been proven up so as to be "admissible at trial" and "would not go to the ineffectiveness of
counsel." Assuming that the trial court had admitted the statement at the motion for new trial
hearing to show ineffectiveness of counsel, it must not be overlooked that the matter of
impeaching one's own witness often presents a difficult question for counsel who has little time
for reflection in the heat of trial.

 The failure of trial counsel to object to the charge that authorized a conviction for
an offense that is at variance with the crime charged in the indictment is the basis of appellant's
fifth complaint about trial counsel's representation. As noted in appellant's first two points of
error, the trial court included limitations in the application paragraph that were consistent with
the charged offense. The evidence supported a constructive transfer. The central issue at trial
was the identity of the person who made the transfer of cocaine to Villareal.

 Viewing the totality of appellant's representation at trial, we hold that the assistance
of counsel was within the range of reasonable assistance, and that appellant was not deprived of
a fair trial. Appellant's third point of error is overruled.

 The judgment is affirmed.



 

 Tom G. Davis, Justice

Before Justices Jones, Kidd and Davis*

Affirmed

Filed: June 21, 1995

Do Not Publish











* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. See
Tex. Gov't Code Ann. § 74.003(b) (West 1988).